CHARLES J. HENDEE & another *vs.* JOHN M. PINKERTON.

A corporation which is authorized to hold lands for depots and storehouses, as well as for railroad purposes, and to allow other railroad corporations to establish depots upon its premises and sell or lease the land necessary therefor, may lawfully mortgage lands held by it, and not required for railroad purposes, to secure bonds issued by said corporation.

If a corporation includes in one mortgage lands which it is authorized to convey and lands which it is not authorized to convey, the mortgage may be upheld as to the former.

If the by-laws of a corporation provide that in the management of its affairs the directors shall have all the powers which the corporation itself possesses, not incompatible with the provisions of the by-laws and the laws of the Commonwealth, and there is nothing in the by-laws incompatible with the exercise by the directors of the power to borrow money, issue bonds, or to convey in mortgage the lands of the corporation as security therefor, the directors may exercise such power.

An impression of the seal of a corporation stamped upon and into the substance of the paper upon which the instrument is written which is designed to be sealed, is a good seal, although no wax, wafer or other adhesive substance is used.

BILL IN EQUITY brought by trustees under a mortgage issued by the Grand Junction Railroad & Depot Company, as security

for certain bonds of said company, to compel the defendant specifically to perform his written agreement to accept and pay for certain land in East Boston, bid off by him at auction. The following facts were agreed:

By the act incorporating the Grand Junction Railroad and Depot Company, and acts in addition thereto, prior to the adoption of the by-laws hereinafter referred to, that corporation was authorized to hold lands in East Boston for depots and storehouses, as well as for railroad purposes, and to allow any other railroad corporation to establish depots upon its premises, and to sell or lease the land necessary therefor; and at the date of the mortgage hereinafter referred to, the corporation owned large tracts of land in East Boston, upon which it was engaged in constructing wharves and warehouses for storage of merchandise, and the lands conveyed by said mortgage, and the subject of this suit, were purchased for the like use, and were not required for the railroad track of the corporation, or for other railroad purposes.

Among the by-laws duly adopted by the corporation, it was provided as follows: " The directors shall have, in the management of the affairs of the corporation, and are hereby invested with, all the powers which the corporation itself possesses, not incompatible with the provisions of these by-laws and the laws of the Commonwealth;" and there was nothing in the by-laws incompatible with the exercise by the directors of the power to borrow money, or to issue bonds, or to convey in mortgage the lands of the corporation as security therefor. At the annual meeting of the corporation, held May 30, 1855, the said by-law was amended by striking out all that part thereof following the words " itself possesses," and inserting in lieu thereof the words " which are not in violation of the rights of the stockholders; provided, also, that the directors shall not enter into any contract or make any expenditure which relates to the permanent leasing or disposal of the property of the corporation, or the purchase of new property to an amount exceeding $50,000, without the consent of the stockholders having been first obained thereto, at a meeting legally notified for that purpose;'

and, at a special meeting of the corporation, held December 14, 1855, the said amendment to the by-laws was reconsidered.

On the first of January 1853, a mortgage was executed to the plaintiffs, as trustees, in the name of the corporation, of several parcels of land owned by the corporation, and about a mile of its railroad track, in East Boston, to secure bonds of that date to the amount of $100,000, payable in five years. This mortgage was signed on the part of the corporation by its president, in pursuance of a vote of the directors authorizing him to do so, and to cause the seal of the company to be affixed thereto.

There was not upon this mortgage any seal of wax or wafer or other adhesive substance, distinct from the paper on which said indenture is written; but, at the time of executing the same, there was impressed upon the paper opposite to the signature thereof, by the president of the corporation, the steel die adopted as the seal of the corporation, said die being constructed in two parts; upon one part thereof was raised and upon the other part was sunk a corresponding device, with letters and figures denoting the name of the corporation and the date of its incorporation; and, by means of said die, said device was indelibly and ineradicably impressed upon and into the substance of said paper; and such impression was so made by the president as and for the seal of said corporation, and in pursuance of the vote hereinbefore referred to. And a similar impression was in like manner made upon each of the bonds at the time of signing and issuing the same.

At several annual meetings of the stockholders of the corporation, prior to the date of the attachments hereinafter referred to, the directors presented their reports, containing a statement of the affairs of the corporation, wherein the indebtedness of the corporation upon said bonds, and the security given therefor by said mortgage, were fully stated and set forth, which reports were accepted by vote of the stockholders.

The equity of redemption of the corporation in the lands conveyed by the mortgage was sold on execution to one Welch, who conveyed the same to George W. Gordon; and by said sale and conveyance a good title to the equity of redemption

was vested in Gordon, provided the mortgage was valid; and the corporation never redeemed the premises therefrom.

The plaintiffs likewise, upon default of payment of the bonds and after demand made upon the corporation for payment of one of them, and by the request of the holders of more than one half in amount of the bonds, entered upon the premises, and, in pursuance of the terms of a power of sale contained in the mortgage, sold the parcel of land which is the subject of this suit by auction to the defendant, he being the highest bidder therefor; and a memorandum of the sale was accordingly signed by the defendant in which he agreed to comply with the terms thereof, and he paid into the hands of the auctioneer one hundred dollars to bind the bargain. The terms of sale provided that if any defect of title should appear, which could not be remedied by the sellers within thirty days, the sale should be void at the option of either party.

The plaintiffs, on the 20th of March 1866, tendered to the defendant their own deed, a deed from Gordon, and a deed from the corporation, and the defendant refused to accept them on these grounds, and others, namely: 1. That said indenture of mortgage was not authorized by the stockholders of said corporation, but only by a vote of the directors thereof; 2. That in and by said indenture there was undertaken to be conveyed, in addition to the parcels of land aforesaid, about one mile of the road-bed and track of said railroad, being but a fractional part thereof; 3. That there is no seal on said deed of indenture, of wax, wafer or other adhesive substance, but only an impression of the corporation seal, as hereinbefore set forth; 4. That prior to the deed of release purporting to be that of said corporation to the defendant, dated March 20, 1866, two large attachments, amounting in the aggregate to over one hundred thousand dollars, were placed upon all the real estate of said corporation in the county of Suffolk, in suits against said corporation, which suits are still pending. But it was agreed that said suits were commenced and said attachments made long after the levy of the execution against the corporation hereinbefore referred to, and the conveyance under the levy and sale thereon to said Gordon.

Upon the foregoing facts, the case was reserved by *Foster*, J., for the determination of the full court.

*W. G. Russell*, for the plaintiffs. The general rule is, that corporations may issue bonds and mortgage their real estate in payment or as security for their debts. Angell & Ames on Corp. §§ 187, 191. The only established limitation of this rule, as applied to railroad corporations, is that they cannot, without distinct legislative authority, alienate their franchises, or their property which is so inseparably connected with their franchises, as to be essential to the exercise and enjoyment thereof. *Commonwealth* v. *Smith,* 10 Allen, 448. *Richardson* v. *Sibley,* 11 Allen, 65. The present case does not come within this limitation. The lands in question were not intended or used for railroad purposes, but were held under special authority for other purposes. St. 1847, *c.* 30, §§ 3, 4. The fact that the mortgage included a small portion of the railroad of the corporation does not avoid the conveyance of the land. *Amesbury* v. *Bowditch Ins. Co.* 6 Gray, 596, 607. *Commonwealth* v. *Hitchings,* 5 Gray, 482. *Shaw* v. *Norfolk Co. Railroad,* Ib. 180. *Pierce* v. *Emery,* 32 N. H. 484. The vote of the directors was a sufficient authority for the execution of the mortgage. The directors of a corporation, in the absence of restriction in the charter or by-laws, have all the authority of the corporation itself in the conduct of its ordinary business. *Bank of Middlebury* v. *Rutland & Washington Railroad,* 30 Verm. 159, 169. Redfield on Railw. 408. This authority extends to contracting debts, and pledging or conveying real or personal estate in payment or as security. *Sargent* v. *Webster,* 13 Met. 497, 503. *Burrill* v. *Nahant Bank,* 2 Met. 163. *Despatch Line of Packets* v. *Bellamy Manuf. Co.* 12 N. H. 225. *Bank of Middlebury* v. *Edgerton,* 30 Verm. 182, 190. *Miller* v. *Rutland & Washington Railroad,* 36 Verm. 452, 474. *Augusta Bank* v. *Hamblet,* 35 Maine, 491. *Jackson* v. *Brown,* 5 Wend. 590. *Hoyt* v. *Thompson,* 19 N. Y. 207. *Gordon* v. *Preston,* 1 Watts, 385. In this case, the by-laws conferred authority; and the subsequent action of the stockholders confirmed it.

The impression of the common seal of a corporation upon

paper, made in the manner above set forth, is a good seal at common law. *Sprange* v. *Barnard*, 2 Bro. C. C. 585. *The Queen* v. *St. Paul*, 7 Q. B. 232. *Carter* v. *Burley*, 9 N. H. 558. *Allen* v. *Sullivan Railroad*, 32 N. H. 446. *Woodman* v. *York & Cumberland Railroad*, 50 Maine, 549. *Bank of Manchester* v. *Slason*, 13 Verm. 334. *Corrigan* v. *Trenton Delaware Falls Co.* 1 Halst. Ch. 52. *Connolly* v. *Goodwin*, 5 California, 220. *Curtis* v. *Leavitt*, 15 N. Y. 1, 90. *Ross* v. *Bedell*, 5 Duer, R. 462. *Pillow* v. *Roberts*, 13 How. 472. *Follett* v. *Rose*, 3 McLean, 332, 335. Sugden on Powers, (8th ed.) 232. Matthews on Presumptions, 39. See also *Commonwealth* v. *Griffith*, 2 Pick. 11, 13; *Tasker* v. *Bartlett*, 5 Cush. 359.

No counsel appeared for the defendant.

FOSTER, J. 1. We entertain no doubt that the Grand Junction Railroad and Depot Company could lawfully sell and convey the lands embraced in this bill. They were not acquired to enable the corporation to carry on the business which it was chartered to do for the benefit of the public, nor needed or used for that purpose. Their alienation in no wise impaired or affected the usefulness of the company as a railroad, or its ability to exercise any of its corporate franchises. In the absence of any express or implied legislative prohibition, this corporation possessed all the ordinary rights of ownership over these lands, and could convey them away absolutely, or mortgage them to secure any valid indebtedness. The recent cases in which railroad mortgages have been adjudged invalid by this court do not countenance any doubt of the power of a railroad company to sell and convey whatever property it may hold, not acquired under the delegated right of eminent domain, or so connected with the franchise to operate and manage a railroad that the alienation would tend to disable the corporation from performing the public duties imposed upon it, in consideration of which its chartered privileges have been conferred.

The special provisions of the acts relative to this company contemplate the acquisition of lands for sale or lease to other railways, and the parcels included in the bill are agreed to have

been purchased for such purposes, and not for the use of the corporation in its own railroad business.

2. It may be true that so much of the mortgage as embraced a portion of the railroad track and the franchise belonging thereto is inoperative and void. But the parcels of land conveyed are entirely separate and independent, not in any way connected with this piece of track. The ordinary rule must be applied to this conveyance, by which, if the part that is valid can be separated from that which is void, and carried into effect, it will be done. *Amesbury* v. *Bowditch Ins. Co.* 6 Gray, 607.

3. The directors were competent to exercise the power of the corporation to convey or mortgage these lands. This is plain from the terms of the by-law investing them with all the powers of the corporation, not incompatible with the by-laws and the laws of the Commonwealth. The authorities cited on the brief of the plaintiffs support the doctrine that the directors of railway corporations may mortgage property to secure debts which they are authorized to contract, even without any express authority from the corporation to do so. But we have no occasion to resort to any such general power on the part of directors, because here the language defining their powers is so broad and explicit as to leave no room for doubt.

4. The objection to the validity of the seal upon the mortgage remains to be considered. It was a distinct and visible impression of the corporate seal upon and into the substance of the paper on which the conveyance was written. This court has always been and still is disposed to recognize and preserve inflexibly the distinction between sealed and unsealed instruments. In this commonwealth a scroll has never been treated as a seal. And a fac-simile of the seal of a corporation printed with ink on the blank form of an obligation at the same time when the blank was printed and by the same agency, has been recently, on full consideration, decided to be a mere scroll, and not a valid seal. *Bates* v. *Boston & New York Central Railroad,* 10 Allen, 251. In that case there was nothing more than a scroll made with types, which differed from the scroll printed on the legal blanks in general use in some of the United States in no

other respect than its resemblance to the common seal of the corporation. A printed scroll is no better than one made by pen and ink. And the fact that it was a fac-simile of the device of the corporate seal did not change its character and convert it from a scroll into a seal. No definition of a seal has ever been made, and none can be suggested, liberal enough to include the method adopted in that case, which would not destroy the distinction uniformly adhered to in the usage and judicial decisions of this state. If we should pronounce every scroll a seal, we should speedily be called upon to take the next step of pronouncing every flourish to be a scroll; and nothing would remain of the ancient formality of sealing. Such a course would not only be an unwarrantable judicial innovation upon the common law, but would obliterate the important practical distinction between two classes of instruments of different degrees of solemnity, one of which does and the other does not conclusively import a consideration; one of which remains binding for twenty years, while the other is by statute subject to a limitation of only six years. No case has been found where such a printed device has been regarded as a seal by any court which preserves the distinction between seals and scrawls or scrolls.

On the other hand, such an impression of a seal as the one now before us has never been held insufficient; while similar seals have been decided to be valid in numerous English and American cases, without, as well as with, the aid of statute provisions. In the present instance, we have a durable impression upon a tenacious substance made for the express purpose of solemn authentication. And after our own courts have allowed wafers instead of wax, and paper with gum or mucilage instead of wafers, there seems little reason why we should hesitate also to allow the sufficiency of an impression of a corporate seal on the paper itself. The extent to which this practice has prevailed among corporations; the fact that the seals of all our own courts have been from an early period of the same description the sanction of numerous decisions in other states and in the federal courts; the convenience and unobjectionable character

of the usage, are arguments in its favor too powerful to be resisted, in the absence of any decisive authority to the contrary.

All the light that can be thrown upon the subject by historical and philological research has been afforded to us by the learned and exhaustive briefs which have been furnished by the counsel in this and a former case. But it is unnecessary to incorporate into this opinion the citations and illustrations collected by their commendable diligence.*

To maintain the distinction between sealed and unsealed instruments the line must be drawn somewhere, and we are satisfied to draw it so as to exclude written or printed scrawls, scrolls or devices; but so as to include an actual and permanent impression, upon the substance of the paper, of the common seal of a corporation.

Upon all the questions submitted to us no defect appears to exist in the title of the plaintiffs in equity, and they are entitled to a decree for specific performance by the defendant of his contract to purchase and pay for the lands described in the bill.

---

* See Mr. Hale's article in 1 Amer. Law. Rev. 638.